UNITED STATES of America, Plaintiff,

v.

0.35 OF AN ACRE OF LAND, MORE OR LESS, SITUATED IN WESTCHESTER COUNTY, STATE OF NEW YORK; First Lawrence Partnership; Vangar Realty Corp.; Kathleen G. Cook; Mary Ann Hagelin; James A. Garrity; Matthew H. Garrity, in their capacity as General Partners of Vangar Realty Corp. and in their individual capacity; County of Westchester Finance Department; Tax Receiver; Town of Greenburgh; Village Treasurer; Village of Tarrytown; Tarrytown School District and Unknown Owners, Defendants and Defendant-in-Rem.

No. 86 Civ. 8891 (PKL).

United States District Court,
S.D. New York.

Oct. 17, 1988.

Rudolph W. Guiliani, U.S. Atty., S.D. N.Y., New York City (Bernard W. Bell, Gerald J. Robinson, of counsel), for plaintiff.

Schneider, Harris & Harris, Woodmere, N.Y. (Steven P. Kuhn, of counsel), for defendants.

OPINION & ORDER

LEISURE, District Judge:

This is a condemnation action in which plaintiff, the United States of America seeks to enforce the terms of an Offer to Sell Real Property (Exh. B to Requests for Admissions dated May 15, 1987; hereinafter "Offer to Sell") given to the United States by defendant Vangar Realty Co. ("Vangar Realty") on December 31, 1984. Plaintiff commenced this action with the filing of a complaint on November 20, 1985. In the first cause of action, the United States alleged that it was acquiring the Tarrytown Post Office by eminent domain, and asserted that the amount of "just compensation" for the property was set forth in the Offer to Sell. The second cause of action stated a claim for damages against Vangar Realty "for their wrongful and wilfull breach of their contract to sell the premises to the United States Postal Service." Complaint ¶ 11. The third cause of action was for a declaratory judgment providing that First Lawrence was bound by the terms of the Offer to Sell. First Lawrence answered the complaint on January 9, 1987 asserting a number of affirmative defenses.

The United States now moves for summary judgment declaring that it is entitled to the Tarrytown Post Office for the price set forth in the Offer to Sell. Defendants have cross-moved for summary judgment seeking to dismiss plaintiff's complaint and ordering plaintiff to pay the fair market value of the condemned property.

FACTUAL BACKGROUND

Plaintiff, the United States, through its instrumentality, the United States Postal Service ("Postal Service"), has leased the premises at 50 North Broadway, Tarrytown, New York, and operated it as the primary post office for the Village of Tarrytown, New York, since 1952. Declaration of Stephen A. Marcinek, executed on December 1, 1987 ("Marcinek Decl." ¶ 3). Recently, the premises have been owned by Vangar Realty, a partnership comprised of the survivors of the former owner. Transcript of the Deposition of Richard E. Burns on December 21, 1987 at 4, 6–7 ("Burns Dep."). The partnership was represented by Richard E. Burns, Esq., and its sole asset was the Tarrytown Post Office. *Id.* at 4. On December 31, 1984, an irrevocable Offer to Sell was entered into between Vangar Realty, and the Postal Service. It provided that Vangar Realty would sell the real estate located at 50 North Broadway, Tarrytown, New York to the Postal Service for $395,000.00. The Offer to Sell was drawn on a pre-printed form provided by the Postal Service and was to remain open for 360 days, expiring on December 26, 1985.

The following are the salient terms of the Offer to Sell. With respect to acceptance of the Offer, Vangar Realty, referred to in the Offer to Sell as "the Vendor", agreed that the offer may be "accepted by the United States Postal Service through any duly authorized representative, by delivering, mailing or telegraphing a notice of acceptance to the Vendor at the address" set forth at the end of the agreement, which was "Richard E. Burns, c/o Burns, Hammer, Burns, 220 East 42nd Street, New York, New York 10017–5806." The Offer to Sell provided that the terms and conditions of the Offer "are to apply to and bind the heirs, executors, administrators, successors and assigns of the Vendor." It further provided that "the Postal Service may acquire title to said land by condemnation or other judicial proceedings, in which event the Vendor ... agrees that the consideration hereinabove stated shall be the full amount of the award of just compensation, inclusive of interest, for the taking of said land...." Finally, the Offer to Sell provided that: "If for any reason whatsoever, the Postal Service cannot acquire the contiguous property by voluntary purchase and sale at a simultaneous closing with the Vendor herein, the Postal Service shall have the right to terminate and cancel this agreement by giving written notice to the Vendor, without any further cost or liability of any nature whatsoever by the Postal Service to the Vendor." The Postal Service needed the property adjoining the Tarrytown Post Office as the property at 50

North Broadway lacked sufficient parking and maneuvering area for Postal Service trucks. No oral or written modification of the Offer to Sell was ever proposed or agreed to by the parties.

In 1985, First Lawrence Partnership ("First Lawrence"),[1] through its General Manager, and partner, Dr. Joshua Feibusch, became interested in purchasing the real estate located at 50 North Broadway, Tarrytown, New York. Feibusch Dep. at 8. First Lawrence Partnership purchased this property on July 1, 1985 from Vangar Realty. The purchase price was $410,000.000. Agreement of Purchase of Sale ¶ 3. "First Lawrence partnership purchased the property subject to and with full knowledge of the existing option contract between Vangar Realty Co. and The United States Postal Service." Defendants' Memorandum of Law in Support of Cross–Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Memorandum in Support") at 4.

At the time of the closing between Vangar Realty and First Lawrence, First Lawrence decided not to notify the Postal Service of the transfer of title. Defendants' Memorandum in Support at 4. First Lawrence asked Burns to continue to accept checks in payment of rent from the Postal Service and, upon receipt, transfer those checks to Robert Harris, Esq., attorney for First Lawrence. Transcript of deposition of Robert H. Harris on August 18, 1987 ("Harris Dep.") at 30; Feibusch Dep. at 37. First Lawrence also expressly asked Burns to receive the executed Offer to Sell if it were sent to him, and to forward it to Harris. Burns Dep. at 26–27; Harris Dep.

at 32–37. Burns agreed to both of these arrangements. Id. Burns believed this obligation was to last indefinitely, Burns Dep. at 27–29, while Harris testified that he assumed the obligation lasted only until First Lawrence provided the Postal Service with a deed evidencing ownership of the Tarrytown Post Office.[2] Harris Dep. at 36. In any event, Harris did not expressly limit the period of Burns' obligation to accept and forward the executed Offer to Sell. Id. After the closing, Vangar Realty forwarded the rent payments received from the United States Postal Service to First Lawrence. Id. at 4.

On October 3, 1985, Dr. Feibusch sent to the United States Postal Service a tax bill covering the Tarrytown Post Office and requested payment of the real estate taxes. Feibusch Dep., Exh. 3 and 3A. The Postal Service received the tax bill on or about October 7, 1985. Declaration of Frances El–Shahat executed on December 1, 1987 at ¶ 4 ("El–Shahat Decl."). At about or around the same time a conversation ensued between El–Shahat and Feibusch's secretary concerning the tax bill. El–Shahat alleges that she advised Feibusch's secretary to send a recorded deed so that the Postal Service could indicate a change of ownership in its records. Id. at ¶ 7. On or about November 25, 1985, El–Shahat received a letter from Robert H. Harris, enclosing a recorded deed and advising the Postal Service where to send future rent payments. El–Shahat Decl. at ¶ 4. The Postal Service's records were updated to reflect the change of ownership. Id. at ¶ 7.

On October 15, 1985, a duly authorized representative of the Postal Service sent to Burns by certified mail, at the address set

---

**1.** First Lawrence consists of two individuals, Joshua Feibusch and Leonard Spodak. Recently, Feibusch transferred his entire interest in the partnership to his wife, Arlene Feibusch. That transfer of interest is not alleged to diminish Feibusch's duties with regard to the partnership, nor to increase those of Arlene Feibusch. Transcript of deposition of Joshua Feibusch on August 7, 1987 at 8, 13 ("Feibusch Dep.").

**2.** Feibusch, in his affidavit, alleged that the agreement wherein Burns was to act as First Lawrence's agent was only to last until the Postal Service was provided with notice of the

change in ownership, not necessarily a deed. See Affidavit of Joshua Feibusch, sworn to on February 16, 1988, at ¶ 20. This testimony contradicts his early deposition where he stated he had not thought of what would happen if the Postal Service sent notification of acceptance to Burns because he did not believe the Postal Service wished to exercise the option. Feibusch Dep. at 28, 29, 31–32 and 35–36. As the Court does not reach the agency theory raised by the plaintiff, it need not decide if this dispute precludes summary judgment.

forth in the Offer to Sell, a notice of acceptance of the offer. Marcinek Decl. ¶ 15; Burns Dep. at 43. Burns received the notice of acceptance on October 17, 1985. Requests for Admissions Exh. C. Burns believed, based on his arrangement with Harris and First Lawrence at the closing, that he was under an obligation to receive the Offer to Sell and send it to Harris. Burns Dep. at 43. By letter dated October 17, 1985, Burns forwarded to First Lawrence's attorney, Harris, the communication received from the Postal Service. Burns Dep. at 50–51; Feibusch Dep. Exh. 5. Harris received the Offer to Sell shortly thereafter. Harris Dep. at 71–72.

On October 29, 1985, David S. Kelson, Senior Assistant Regional Counsel for the Postal Service, Ronald A. Kern, a realty specialist with the Postal Service whose responsibility included the Tarrytown Post Office, and Marcinek, called Burns. There was a discussion concerning why no arrangements had been made for conveyance of the property to the Postal Service. The substance of this conversation is in dispute. Kelson, Kern and Marcinek subsequently called Harris. Robert Harris stated that Vangar Realty no longer owned the Tarrytown Post Office and reiterated that First Lawrence was the owner. Defendants' Memorandum in Support at 5.

Shortly thereafter the Regional Counsel of the Postal Service was asked to bring an action for specific performance of the executed Offer to Sell. Marcinek Decl. ¶ 20 and Exh. E. By letter dated November 20, 1985, Kelson asked Burns to "advise the undersigned promptly whether your client is ready, willing and able to transfer title to the Postal Service as set forth in the Offer to Sell." Feibusch Dep., Exh. 8 at 54. Kelson further noted that "the Postal Service desires to consummate the sale pursuant to the provisions of the Offer to Sell." Feibusch Dep, Exh. 8. Finally the letter warned that "if we fail to receive a re-

sponse within ten (10) days from the date of this letter, we shall take such legal action as may be appropriate and in the best interest of the Postal Service." *Id.* Burns forwarded the letter to Harris. Burns Dep. at 57. The Postal Service received no response to this letter. The option period expired without further significant communication [3] between Postal Service representatives and either Burns, Harris, or Feibusch regarding the Tarrytown Post Office.

Although the Postal Service had not by the end of the option period agreed with Feldman on terms for the sale of the adjoining property, it did not invoke paragraph 19 of the Offer to Sell, which allowed it to annul the agreement to purchase the Tarrytown Post Office if it could not acquire the adjoining property. The Postal Service continued to negotiate with Feldman to lease or purchase the adjoining property until it finally entered into a lease with Feldman for the adjoining property on October 26, 1986. Marcinek Decl. ¶ 23. During the period preceding the lease the Postal Service refused to discuss new lease terms with First Lawrence and sought to locate alternative space.

On June 11, 1986 Feibusch wrote the Postal Service that as they had refused to discuss a renewal of the lease First Lawrence was giving formal notice that they must vacate the premises by November 18, 1986. Feibusch Aff. at ¶ 15. Subsequently, on November 18, 1986, the United States, through its power of eminent domain, condemned the real property at 50 North Broadway, Tarrytown, New York, and deposited the sum of $395,000.000 into the Court. Plaintiff claims this sum represents just and fair compensation to the condemnee.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

---

**3.** There was an additional conversation between Harris and Marcinek. Harris testified that he had told Marcinek that the Postal Service should send notice of acceptance to First Lawrence. Harris Dep. at 61, 74. Marcinek disputes this statement, asserting that Harris never told him that he needed to send acceptance of the Offer to Sell to First Lawrence. Marcinek Decl., ¶ 19. This factual dispute is not material and therefore does not prevent the entry of summary judgment.

ment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [i]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court then must determine whether there does indeed exist a genuine issue as to any material fact; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *id.*—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgement may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

## DISCUSSION

*Interpretation of the Offer to Sell*

 The dispute in this case revolves around the construction of the Offer to Sell entered into by Vangar Realty and the

**1070**

Postal Service. The question of interpretation is one of law to be answered by the Court and summary judgment is appropriate where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning. *See Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.,* 25 N.Y.2d 535, 540, 307 N.Y.S.2d 449, 452, 255 N.E.2d 709, 712 (1969); 3 A. Corbin, *Corbin on Contracts* § 554, at 222 (1960).⁴ The determination of whether a contract or contract term is ambiguous is a threshold question of law for the Court. *See Tokio Marine & Fire Insurance Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir.1980); *Sutton v. East River Savings Bank,* 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462, 435 N.E.2d 1075, 1077 (1982).

As a general matter, the objective of contract interpretation is to give effect to the expressed intention of the parties. *See, e.g., Rothenberg,* 755 F.2d at 1019; *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169, 171–72, 350 N.Y.S.2d 895, 898, 305 N.E.2d 907, 910 (1973); *Airco Alloys Division, Airco, Inc. v. Niagara Mohawk Power Corp.,* 76 A.D.2d 68, 77, 430 N.Y.S.2d 179, 184 (4th Dep't 1980); 4 S. Williston, *Williston on Contracts* § 600 (3d ed. 1961). The strongest external sign of agreement between contracting parties is the words they use in their written contract. Thus, a Court will make no inference or give any construction to the terms of a written contract that may be in conflict with the clearly expressed language of the written agreement.

It follows that contract ambiguity is not established simply because the parties disagree as to the meaning of a particular provision. *See Libra Bank, Ltd. v.*

*Banco Nacional de Costa Rica, S.A.,* 570 F.Supp. 870, 893 (S.D.N.Y.1983); *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690, 695 (10th Cir.1981); *Boudreau v. Borg–Warner Acceptance Corp.,* 616 F.2d 1077, 1079 (9th Cir.1980). In the absence of ambiguity, as determined by the Court, evidence as to the subjective intent of the parties may not be substituted for the plain meaning that would otherwise be ascribed to the language of a written agreement by a reasonably intelligent person having knowledge of the surrounding circumstances. An objective standard is essential to maintain confidence in the written integrated agreement as the medium of conducting commercial relations.

Therefore, where the language chosen contains no inherent ambiguity or uncertainty courts are hesitant, under the guise of judicial construction, to imply additional requirements to relieve a party from an asserted disadvantage following from the terms used. *See, e.g., Collard v. Village of Flower Hill,* 52 N.Y.2d 594, 604, 439 N.Y.S.2d 326, 331, 421 N.E.2d 818, 823 (1981); *Aloi v. Board of Education of West Babylon, etc.,* 81 A.D.2d 874, 876, 439 N.Y.S.2d 169, 172 (2d Dep't 1981). In determining if a term is ambiguous the courts have utilized the following definition:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir. 1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987, 994 (S.D.N.Y.1968) (citations ommitted)).

**4.** Without discussion in their memoranda of law, the parties appear to agree, and the Court therefore assumes, that New York law is applicable to the substantive issues raised in the motions. *See Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *cf. Ostano Commerzanstalt v. Telewide Systems, Inc.,* 794 F.2d 763, 765 n. 1 (2d Cir.

1986). It is, of course, well established that, "[a]bsent controlling federal legislation or rule of law, questions involving real property rights are determined under state law, even when the United States is a party." *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (citing *State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 378–81, 97 S.Ct. 582, 590–92, 50 L.Ed.2d 550 (1977)).

It is axiomatic that if the language of an agreement is explicit and unambiguous the courts must give it its plain meaning. *Omaha Indem. Co. v. Johnson & Towers, Inc.*, 599 F.Supp. 215, 218 (E.D.N.Y.1984); *Laba v. Carey*, 29 N.Y.2d 302, 308, 327 N.Y.S.2d 613, 618, 277 N.E.2d 641, 644 (1971); *Procopio v. Fisher*, 83 A.D.2d 757, 758, 443 N.Y.S.2d 492, 495 (4th Dep't 1981). "[O]ur goal must be to accord the words of the contract their 'fair and reasonable meaning.'" *Sutton v. East River Sav. Bank*, 55 N.Y.2d 550, 555, 450 N.Y.S.2d 460, 463, 435 N.E.2d 1075 (1982) (quoting *Heller v. Pope*, 250 N.Y. 132, 135, 164 N.E. 881 (1928)).

▮ Turning to the present case, the first question to be determined, is whether the acceptance provision in the Offer to Sell is ambiguous. The Court must determine whether the agreement is so beset by ambiguity that the determination of the intent of the parties requires a trial at which a jury or other fact finder could clear up the ambiguity by passing on the credibility of the extrinsic evidence and whatever inferences reasonably could be drawn therefrom. Applying the foregoing principles, the Court finds, as a matter of law, that the Offer to Sell is explicit regarding its proper method of acceptance and this Court declines to read in ambiguities or otherwise alter its plain meaning.

The plain meaning of the terms used in the Offer to Sell clearly direct the Postal Service to deliver, mail, or telegraph notice of acceptance to Vangar Realty at the address set forth at the end of the Offer to Sell: Richard E. Burns; c/o Burns, Hammer, Burns; 226 East 42nd Street; New York, New York 10017-5806. Paragraph 13 of the Offer to Sell explicitly provides that all "heirs, executors, administrators, successors, and assigns" of Vangar Realty are bound by the preceding twelve terms and conditions, the very first of which is that the Offer to Sell may be accepted by "delivering, mailing or telegraphing notice of acceptance" to Vangar Realty. In arguing that the term "the vendor" means the owner of the Tarrytown Post Office, First Lawrence ignores the plain language of the Offer to Sell. The Offer to Sell defines "the vendor" as Vangar Realty—"The Undersigned [Vangar Realty], hereinafter called the vendor...."[5] The Offer to Sell could not more clearly express the parties' intent that acceptance of the Offer to Sell was to be sent to Burns and that such delivery bound any successors-in-interest. Moreover, there was no provision allowing modification of the notice provision of the Offer to Sell nor did First Lawrence seek any such modification, counting instead on the belief that the Postal Service would not exercise its option. *See* Feibusch Dep. at 28, 29, 31–32 & 35–36.

First Lawrence now argues that the Offer to Sell provides that notice of acceptance was to be sent to the successor-in-interest or, alternatively, that the Offer to Sell is at least ambiguous on the point and must be construed against the drafter.

**5.** Alternatively, First Lawrence argues, for the first time in its Reply Memorandum, that under the Offer to Sell notice was to be addressed not to Vangar Realty, a New York partnership, but to each of the four individuals comprising the partnership. Defendants' Reply Memorandum at 4–6. The Offer to Sell defined the "vendor" as "the undersigned." The signatories of the Offer to Sell were Kathleen G. Cook, Matthew H. Garrity, Mary Ann Hagelin, and James A. Garrity. However, the four signed as partners in Vangar Realty which is clear from paragraph 15 of the Offer to Sell. Indeed, having the individuals sign as unrelated individuals and not as partners in Vangar Realty would make no sense as Vangar Realty owned the Tarrytown Post Office.

Moreover, even if the Offer to Sell required notice of acceptance to each of the individual partners this was satisfied. As a general rule, a partnership is not a separate legal entity from the individuals that comprise the partnership. *See, e.g., Williams v. Hartshorn*, 296 N.Y. 49, 51, 69 N.E.2d 557 (1946); *Chemical Bank of Rochester v. Ashenburg*, 405 N.Y.S.2d 175, 94 Misc.2d 64 (Sup.Ct. Nassau Co.1978). Receipt of the acceptance of the Offer to Sell by the partnership, Vangar Realty, would be considered receipt of the acceptance of the offer by the individual partners that comprise the partnership. There is no reason that an acceptance addressed to the partnership and delivered to the person who the four partners designated as their agent to receive such an acceptance should not be viewed as having been received by the four individual partners.

**1072**

This argument is clearly untenable. The clause binding successors-in-interest to all provisions of the Offer to Sell cannot be read to provide just the opposite with respect to the notice of acceptance provision. First Lawrence, having been unable to find any alternative meaning to the actual words used by the parties urges this Court to modify the parties' contract, through the guise of judicial construction, to include terms that First Lawrence deems sensible but that the contract does not include. Defendants argue that because the Offer to Sell did not provide that notice of acceptance was to be delivered to the owner of the property at the time of acceptance, First Lawrence, the Offer to Sell was ambiguous.

Defendant's construction argument must fail. The terminology employed in the Offer to Sell is explicit. The concept that defendant would invoke is not obscure and language to give it effect was readily available had it been the intention of the parties to include this added provision. Defendants point to no canon of construction in the law of contracts which would call for judicial insertion of the missing clause.[6] While it is true, as defendants argue, that when there are ambiguous provisions of a contract those provisions should, in general, be construed against the drafter, where the language, as here, is unambiguous, it is unnecessary to resort to the principles of construction applicable to ambiguous contracts. *See Waterman S.S. Corp. v. United States,* 595 F.2d 91 (2d Cir.1979). In effect, defendants argue that because the parties did not agree to terms that it believes wise, the contract is ambiguous.

The Offer to Sell explicitly and unambiguously provides that it could be accepted by notice to Burns within the requisite time period. This present interpretation of the Offer to Sell is one to which reasonable persons could not disagree. Indeed any other interpretation would directly contradict the express terms of the agreement. Given the limited duration of the option, and potentially, the continuing responsibility of the Postal Service under the Offer to Sell it was entirely reasonable for the parties to decide that notice to Burns would be the method of properly accepting the option and would bind any successors-in-interest. A contrary reading, mandating notice to some unknown successor in interest, would only add uncertainty into the document. Moreover, although First Lawrence, which was not even a party to the Offer to Sell, may view the provision that notice was to be given to Vangar Realty, regardless of subsequent transfers of the property, as "incongruous", the clear and unambiguous meaning of the words used in the Offer to Sell clearly constitute just such a provision. Indeed, nowhere does First Lawrence explain how the words used in the Offer could be read in any other way.

In sum, the Offer to Sell is unambiguous on what notice was required to constitute valid acceptance. Accordingly, this Court will not attempt to rewrite the plain terms of the Offer to Sell but will enforce the terms as written and agreed to. As the Postal Service admittedly sent the requisite notice to Burns within the option period, and that notice was forwarded to

**6.** Defendants' argument that the law of assignments required the Postal Service to send the notice of acceptance to First Lawrence after receiving notice that First Lawrence was the new owner of the Tarrytown Post Office is unpersuasive. The New York courts have not addressed the issue of who is entitled to notice when a lessor of property subject to an option transfers his interest. Other courts which have addressed this issue have held that notice is to be delivered to the new owner only if that was the intent of the parties to the original contract and the lessee was given reasonable notice of the transfer of title. *See, e.g., Mobil Oil Corp. v. First Western Savings Ass'n,* 96 Nev. 602, 614 P.2d 6 (1980) (lease required "all notices be ...

sent ... to the lessor at a stated address unless changed by notice"); *American Oil Co. v. Rasar,* 203 Tenn. 37, 308 S.W.2d 486 (1957) (express addendum adding new lessor to lease); *Pillsbury Investment Co. v. Otto,* 242 Minn. 432, 65 N.W.2d 913 (1954) (notice properly sent to original owner); *Sanni, Inc. v. Fiocchi,* 111 Ill.App.3d 234, 66 Ill.Dec. 945, 951, 443 N.E.2d 1108, 1114 (2d Dist.1982) (notice of renewal of lease to be given to "Lessor (or the assigns)"). As this Court has determined that the Offer to Sell required notice be sent to Burns, First Lawrence cannot change the terms of the original agreement to add terms it would have included as an original party to the Offer to Sell.

First Lawrence, a binding contract was formed. First Lawrence has conceded that if the option was validly exercised then it was bound thereby as Vangar Realty's successor-in-interest. This Court finds that the Offer to Sell was properly accepted by the Postal Service.

*The Affirmative Defenses*

As the Offer to Sell was properly accepted, the next question is whether the defendants have asserted any valid defenses to it. In its Answer to the Complaint, First Lawrence asserted nine affirmative defenses. Each of these defenses lacks merit and therefore do not preclude the granting of summary judgment for the Postal Service.

As this Court has already determined that the Offer to Sell was properly accepted, the premise of the first, second, third, sixth and eighth affirmative defenses—that the Offer to Sell was not properly accepted, must be rejected, as must those defenses themselves. Additionally, the ninth affirmative defense, is rejected as frivolous. The ninth affirmative defense asserts that the Postal Service's claim for declaratory relief, in Count III of the Complaint, is barred by the existence of adequate remedies "at law." Rule 57 of the Federal Rules of Civil Procedure clearly provides that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *Accord, Notes of the Advisory Committee on Rules* ("[w]hen declaratory relief will not be effective in settling the controversy, the court may decline to grant it[;] [b]ut the fact that another remedy would be equally effective affords no ground for declining declaratory relief."); *Powell v. McCormack*, 395 U.S. 486, 517–18, 89 S.Ct. 1944, 1961–62, 23 L.Ed.2d 491 (1969); *Beacon Looms, Inc. v. S. Lichtenberg & Co.*, 552 F.Supp. 1305, 1315 (S.D.N.Y.1982); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2758 (1982).

The fifth affirmative defense avers that the Postal Service cannot condemn the Tarrytown Post Office because, at the time the condemnation suit was filed, it had a leasehold interest in the property. At the outset, it should be noted that the scope of judicial review over the United States' exercise of its condemnation powers is "decidedly limited." *United States v. New York*, 160 F.2d 479, 481 (2d Cir.), *cert. denied*, 331 U.S. 832, 67 S.Ct. 1512, 91 L.Ed. 1846 (1947). In particular, the only subject for inquiry is whether acquisition of property was for a congressionally authorized purpose. *Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–103, 99 L.Ed. 27; *United States v. .16 of an Acre*, 517 F.Supp. 1115, 1120 (E.D.N.Y.1981); *Merjanian v. United States*, slip op. no. 80–7122 (S.D.N.Y. February 10, 1981). Though some courts have held the taking of property by condemnation may be barred if the taking results from bad faith or arbitrary and capricious motives, *e.g., United States v. 101.88 Acres of Land, et al.*, 616 F.2d 762 (5th Cir.1980), the Second Circuit has not yet allowed such a defense in a condemnation action. *United States v. New York*, 160 F.2d at 481; *.16 of an Acre*, 517 F.Supp. at 1120. Moreover, the desire to enforce a valid contract cannot be deemed bad faith.

Under these principles this Court must reject defendants' fifth affirmative defense. The courts have consistently and repeatedly rejected arguments such as this that the United States may not condemn a fee simple interest because some lesser interest is satisfactory. *Berman v. Parker*, 348 U.S. at 35–36, 75 S.Ct. at 103–104; *Ledford v. Corps of Engineers*, 500 F.2d 26, 28 (6th Cir.1974) ("[t]he extent, amount, or title of property taken lies within administrative determination subject only to the requirement that just compensation be paid"); *West, Inc. v. United States*, 374 F.2d 218, 223 (5th Cir.1967); *Wilson v. United States*, 350 F.2d 901, 906 (10th Cir. 1965) ("the nature or extent of the interest to be acquired is not reviewable"); *United States v. 49.79 Acres of Land*, 582 F.Supp. 368, 373 (D.Del.1983) ("[t]he argument that a fee simple title is not necessary to accomplish the purposes contemplated by the legislation is frequently made in condemnation cases[;] [h]owever, it has been unanimously rejected by every court which has con-

sidered the issue"). Accordingly, First Lawrence's defense lacks merit.

 The fourth and seventh affirmative defenses assert that the United States may not enforce the provisions of the Offer to Sell because the United States somehow failed to perform its obligations under the Offer to Sell. The fourth affirmative defense asserts that the Postal Service took no steps to bring about closing of title after accepting the Offer, and the seventh affirmative defense states in general that the Postal Service failed to perform its obligation under the Offer to Sell. These defenses lack merit.

It is well-settled that when one party breaches or repudiates a contract, its contract partner's duty to perform ceases and the contract partner may bring an action for damages or specific performance. 4 *Corbin on Contracts* §§ 978 & 1175; 22 N.Y.Jur., Contracts at § 435; *Restatement (Second) of Contracts* § 237. To obtain specific performance, a plaintiff need only show that it tendered its own performance or that it was ready, willing and able to perform its obligation in return for the breaching party's performance of its obligation. *See, e.g., Huntington Mining Holdings, Inc. v. Cottontail Plaza, Inc.,* 60 N.Y.2d 997, 471 N.Y.S.2d 267, 459 N.E.2d 492 (1983). For a plaintiff to demonstrate that it was ready, willing and able to perform its obligation, it need only show that "the defendant would have received what defendant had contracted for from plaintiff had defendant performed." *Kotcher v. Edelblute,* 250 N.Y. 178, 183, 164 N.E. 897, 899 (1928); 4 *Corbin on Contracts* § 978. Moreover, "the willingness and ability to perform need not continue after the repudiation; it is merely required that they should have existed before the repudiation and that plaintiff would have rendered the agreed performance if the defendant has not repudiated." 4 *Corbin on Contracts* § 978.

Here, defendants cannot genuinely dispute that the Postal Service would have paid them $395,000.00 for the Tarrytown Post Office if they had provided a proper deed to the Postal Service and cured all defects in title. The Postal Service accept-ed the Offer to Sell more than two months before the deadline for acceptance. Defendants failed to perform by not providing a proper deed or curing title defects. The Postal Service sent a letter to Richard Burns requesting a draft deed and cure of all title defects. Requests for Admissions, ¶ 11 & Exh. C. When no arrangements were made for the transfer of property the Postal Service representatives initiated legal action to obtain the property. Marcinek Decl., Exh. E. The Postal Service then wrote a letter demanding that either Vangar Realty or First Lawrence perform their duties and transfer the property. Requests for Admissions, Paragraphs 18, 19 & Exh F. Thus, it is clear that, as of the date of the acceptance the Postal Service would have given First Lawrence or Vangar Realty $395,000.00 in return for the deed. Indeed, if the Postal Service wished to repudiate the option contract it was given that explicit right.

In arguing that the Postal Service would have breached the contract even if it had been offered a deed, First Lawrence relies on the Postal Service's difficulty in securing title to the adjoining property. In light of the early exercise of the Offer to Sell and the attempts to secure performance, defendants' claim that plaintiff failed to perform under the Offer to Sell are baseless.

## CONCLUSION

The Postal Service properly accepted the Offer to Sell and therefore a binding contract was formed. First Lawrence is bound to the terms of this agreement as Vangar Realty's successor-in-interest. None of the defendants' affirmative defenses bar the enforcement of this contract.

Therefore, plaintiff's motion for summary judgment is granted. Defendants' motion for summary judgment is accordingly denied.

SO ORDERED.