UNITED STATES of America, Plaintiff,

v.

0.16 OF AN ACRE OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF SUFFOLK, STATE OF NEW YORK, and Frederick Rose, State of New York, County of Suffolk, Suffolk County Real Property Tax Services, Thurman B. Givan and Crispin Cooke, d/b/a North Shore Medical Group, William Peio, Smithhaven Holding Corp., and Unknown Others, Defendants.

No. 79 C 1755.

United States District Court, E. D. New York.

July 6, 1981.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Laura R. Handman, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff.

Flower & Plotka, Bay Shore, N. Y. (Bonita G. Lesnik, Islip, N. Y., of counsel), for defendants.

## AMENDED MEMORANDUM AND ORDER

NICKERSON, District Judge.

On July 9, 1979, plaintiff United States of America brought this action to condemn a certain parcel of land. Pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a, a declaration of taking was filed, an estimated just compensation of $20,000 was deposited with the court, and title vested in the United States. By order of this court dated July 9, 1979 the United States was awarded immediate possession, and just compensation to those entitled to it was ordered to be ascertained and awarded in accordance with established procedures.

Defendant Frederick Rose, who had received notice of the taking, filed an answer raising multiple objections to the condemnation. The United States moves to strike those objections and for summary judgment.

The following facts are undisputed. In May of 1977, Rose bought a plot of land located on the westernmost part of Davis Park in the Town of Brookhaven, Suffolk County, New York. Davis Park is within the boundaries of the Fire Island National Seashore. On the plot's northern border is Great South Bay and on the west is undeveloped federal land. The plot contained a house built prior to the creation of the National Seashore.

In 1977 Rose applied to the Town Zoning Board for a variance from the minimum plot area and yard setback requirements of the applicable zoning ordinances and for a building permit. He proposed to subdivide the plot and construct an additional residence on a portion fronting the Bay. The Superintendent of the Seashore sent a letter on August 11, 1977, to the Board making objections to the granting of the variance. Nevertheless, on February 15, 1978 the variance and building permit were granted. In a July 6, 1978 letter the Superintendent told Rose of the National Park Service's continuing objections.

In April 1979 Rose commenced construction of a residence on the subdivided parcel

of 0.16 acres. Pursuant to authority from Congress the Secretary of the Interior instituted this proceeding to condemn the subdivided parcel. The remainder of the original parcel, on which the original house stands, remains in Rose's possession.

Rose's answer asserts eleven objections to the taking. These allege, with considerable duplication, that the taking 1) is not authorized by the Fire Island National Seashore Act, 16 U.S.C. § 459e *et seq.*, 2) was arbitrary and capricious and in bad faith, 3) violated the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, and 4) violated defendant's right to due process under the Fifth Amendment. Defendant thereafter also claimed that the taking violated the Tenth Amendment. These allegations will be discussed seriatim.

## I. *Statutory Authority*

■ On September 11, 1964 Congress passed the Fire Island National Seashore Act, 16 U.S.C. § 459e *et seq.*, establishing the Fire Island National Seashore. The Act recites that its purpose is to conserve and preserve, "for the use of future generations certain relatively unspoiled and undeveloped beaches, dunes, and other natural features" on and near that island. 16 U.S.C. § 459e(a). The Act further provides that:

> The Secretary is authorized to acquire, and it is the intent of Congress that he shall acquire as appropriated funds become available for the purpose . . . the lands, waters, and other property, and improvements thereon and any interest therein, within the boundaries of the seashore . . . .

16 U.S.C. § 459e–1(a).

The only limits on the Secretary's authority to carry out this mandate by condemning private property within the boundaries of the National Seashore are, so far as relevant here, as follows:

> With one exception [not pertinent here] the Secretary shall not acquire any privately owned improved property or interests therein within the boundaries of the seashore or any property or interests therein within the communities delineat-

ed on the boundary map [of which the Davis Park is one] . . ., except beach or waters and adjoining land within such communities which the Secretary determines are needed for public access to the beach, without the consent of the owners so long as the appropriate local zoning agency shall have in force and applicable to such property a duly adopted, valid, zoning ordinance that is satisfactory to the Secretary.

16 U.S.C. § 459e–1(e). This suspension of the authority of the Secretary to acquire by condemnation ceases automatically under the circumstances set forth in 16 U.S.C. § 459e–2(e), which provides in pertinent part:

> If any improved property, with respect to which the Secretary's authority to acquire by condemnation has been suspended according to the provisions of . . . this title, is made the subject of a variance under, or becomes for any reason an exception to, such zoning ordinance, or is subject to any variance, exception, or use that fails to conform to any applicable standard contained in regulations of the Secretary issued pursuant to this section and in effect at the time of the passage of such ordinance, the suspension of the Secretary's authority to acquire such improved property by condemnation shall automatically cease.

While the Town of Brookhaven never submitted its zoning plan to the Secretary for approval, the applicable regulations provide that, "[t]hose provisions relating to acreage, frontage, and setback requirements contained in zoning ordinances of the town [] of Brookhaven . . . are hereby incorporated as the acreage, frontage, and setback standards for developments with the Seashore . . . ." 36 C.F.R. § 28.6(a)(5).

Rose's argument is ingenious if not persuasive. It goes as follows. Section 459e–1(e) prohibits the acquisition without an owner's consent (where a zoning ordinance "satisfactory" to the Secretary is in effect) of "improved property" anywhere within the national seashore and of "any property," improved or unimproved, within the

"communities" delineated on a certain boundary map, including Davis Park. By incorporating the Brookhaven zoning ordinances in the federal standards the Secretary designated those ordinances as "satisfactory" to him. The section providing that the prohibition against condemnation shall cease when a variance from a zoning ordinance is granted, section 459e–2(e), refers not to "any property" but to "any improved property" over which the Secretary's power to acquire has been suspended. Therefore, says Rose, while the Secretary can condemn in Davis Park a parcel subject to a variance with a residence on it, he may not condemn a vacant or "unimproved" parcel in that community.

Rose does not suggest any plausible reason why Congress should choose to bring about such an incongruous result, according to unimproved plots in the designated community greater protection against condemnation than that given to occupied parcels. It would seem that any rational plan would hardly favor the owner of vacant land over the established homeowner. Indeed, the emphasis in the Senate Report and the report by the Secretary of the Interior in support of the legislation was on the protection of the owners of improved property not only against condemnation but against "any undesirable use or development." 88th Cong. 2d Sess., *reprinted in* [1964] U.S. Code Cong. and Ad. News 3710 ff.

The scheme appears to have been to treat for purposes of protection against condemnation all the properties in the delineated (and presumably populous) "communities" as equivalent to the improved properties elsewhere in the national seashore. The Senate Report leaves no doubt on this score. "The bill further provides that private property, both improved and unimproved, may be retained by its owner, within certain designated communities, *as long as it is maintained in accordance with approved local zoning requirements . . . .*" (Emphasis supplied). S.Rep. No. 1300, 88th Cong.2d Sess., *reprinted in* [1964] U.S. Code Cong. and Ad. News 3710. It would make no sense to permit the Secretary to protect the seashore against local variances only when

the property is improved and leave to local authorities in the designated communities the uninhibited decision to allow by variance massive or polluting structures on vacant land. Thus Section 459e–2(e) should be read to bring an end to the suspension of the power of the Secretary to condemn whenever and wherever local variances are granted. For purposes of Section 459e–2(e) therefore the words "improved property" may fairly be read to include any property within the designated communities.

This may seem literally inconsistent with Section 459e–1(f) defining improved property as any building the construction of which was begun before July 1, 1963, and such amount of the land (not exceeding two acres for a residence) as the Secretary considers "reasonably necessary to the use of the building." But the court is not required to read the statute so literally as to frustrate its manifest purpose. Indeed, the very definition of "improved property" in Section 459e–1(f) emphasizes how fatuous would be the result if Rose's interpretation were accepted. The Secretary would have no means of protecting against wholesale variances for property vacant before July 1, 1963 in the delineated communities except by withdrawing his approval of all zoning ordinances. That would subject every householder in those communities to the possibility of condemnation.

In any event the 0.16 acre subdivided parcel can be treated by the Secretary as "improved property" as that term is defined in Section 459e–1(f). It was part of a larger parcel of less than two acres on which a residence was built before July 1, 1973, and the Secretary can consider the entire original parcel as "reasonably necessary to the use" of the original building.

The Secretary had the power under the Act to condemn.

Two other objections relating to the statutory authority are without merit. Rose alleged as his eleventh objection that the taking had not been "duly approved" by the Secretary. He now concedes that the action was commenced at the Secretary's be-

hest. In addition, whatever right Rose may have to reserve a lesser estate in "improved property" under 16 U.S.C. § 459e–1(e)(1) through (3) does not afford him, as he supposes, a defense to the taking but merely permits an election as to compensation.

## II. *The Exercise of Discretion*

■ If a statute authorizes a condemnation, "the scope of judicial review is decidedly limited ...." *United States v. New York*, 160 F.2d 479, 481 (2d Cir.), cert. denied, 331 U.S. 832, 67 S.Ct. 1512, 91 L.Ed. 1846 (1947). The only subject for inquiry is whether the taking was for a congressionally authorized public purpose. *Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1955); *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *United States v. 255.25 Acres of Land*, 553 F.2d 571, 572 n.2 (8th Cir. 1977); *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975). A court may not determine whether the taking of a particular parcel is necessary to effectuate that public purpose. *Berman v. Parker, supra*, 348 U.S. at 32–33, 75 S.Ct. at 102); *United States v. Carmack*, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946) (selection of a particular site for a post office "constituted an administrative and legislative decision not subject to judicial review on its merits"); *United States v. New York, supra; Merjanian v. United States*, No. 80 C 7122 (S.D.N.Y. February 10, 1981).

■ Rose argues that the taking of his parcel was not for the congressionally authorized "purpose of conserving and preserving ... relatively unspoiled and undeveloped beaches, dunes, and other natural features," 16 U.S.C. § 459e(a). He says that a taking of his lot, bordering a developed portion of the beachfront, will not increase or protect the "relatively unspoiled" beachfront, and he requests a hearing to show this.

This contention amounts to no more than an assertion that the taking was not necessary or effective to achieve the authorized purpose. Perhaps if the acquisition of Rose's parcel bore no discernable relation to

protecting the beaches, dunes and other natural features of the Seashore a court could intervene. *United States v. 2,606.84 Acres*, 432 F.2d 1286 (5th Cir. 1970), *cert. denied*, 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971). But the parcel is on the border of unoccupied federal land, and this court could hardly conclude, under any set of facts which Rose might show, that a threat of additional construction on that border is unrelated to the preservation of Fire Island's unspoiled areas.

■ Rose contends that the taking would benefit the private owners of other plots more than the public. Even if this were so, collateral benefits flowing to private parties do not invalidate the condemnation. *United States v. 416.81 Acres*, 514 F.2d 627 (7th Cir. 1975).

■ Defendant also says that the condemnation was arbitrary and capricious and in bad faith. It has not been determined in this circuit whether this is a defense to a taking. *United States v. Carmack*, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946) (reserving the question); *United States v. New York*, 160 F.2d 479 (2d Cir.), cert. denied, 331 U.S. 832, 67 S.Ct. 1512, 91 L.Ed. 1846 (1947) (same). But those cases outside this circuit which have held that the right to condemnation may be denied because of egregious bad faith or arbitrary and capricious government action have required specific and detailed allegations. *Compare United States v. 416.81 Acres*, 514 F.2d 627 (7th Cir. 1975) *with United States v. 58.16 Acres*, 478 F.2d 1055 (7th Cir. 1973). Rose says he cannot specify the bad faith in the absence of discovery in the case. But before the court will permit a litigation over the right to condemn to proceed, the objectant must set forth some facts from which improper motives may be inferred.

Rose alleges only that his land is within the developed community of Davis Park, that other plots of a size and location similar to his contain residences, and that the applicable General Management Plan and Environmental Impact Statement for the Fire Island National Seashore indicate that

little purpose would be served by the piecemeal acquisition of scattered lots in developed areas. This is no indication of bad faith. As the map before the court shows, Rose's parcel is the only one both on the seashore and on the border of the federal lands. Thus the location of this parcel provides a rational reason for acquiring it, and indeed for giving it different treatment from that given other parcels within the community.

## III. *National Environmental Policy Act*

 The National Environmental Policy Act requires that federal agencies file an environmental impact statement prior to any "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C). On November 17, 1977 a final Environmental Impact Statement and a General Management Plan for the Fire Island National Seashore were filed. Rose contends that these documents fail to deal adequately with the possible adverse environmental effects on developed communities of the expansion of federal land holdings within those communities, and that until that issue is adequately addressed, condemnations such as this one cannot proceed.

The question whether an alleged failure to satisfy the requirements of the National Environmental Policy Act states a defense to a condemnation action has not been decided in this circuit. Other courts are divided on the point. *Compare United States v. 255.25 Acres*, 553 F.2d 571, 572 n.2 (8th Cir. 1977) (defense "has no merit") *with United States v. 18.2 Acres*, 442 F.Supp. 800 (E.D. Cal.1977) (permitting the defense). Even if the defense were available to Rose and he had alleged sufficient environmental injury to have standing to press the contention, *see Monarch Chemical Works, Inc. v. Exon*, 452 F.Supp. 493, 498–99 (D.Neb.1978), *aff'd*, 604 F.2d 1083 (8th Cir. 1979) (environmental injury must be alleged to raise NEPA defense); *United States v. 18.2 Acres, supra*, 442 F.Supp. at 805–06 (same), he would not succeed in halting the condemnation.

The statute in § 4332 requires an environmental impact statement only when the federal government undertakes "major" actions. An action must be "major" in light of both its absolute quantitative adverse effects, including the cumulative harm resulting from its contribution to existing conditions, and the excess of those negative effects over those caused by existing uses. The identification of which actions are "major" is the responsibility of the federal agency concerned. *Cross-Sound Ferry Services, Inc. v. United States*, 573 F.2d 725, 731 (2d Cir. 1978).

The condemnation of Rose's 0.16 acre parcel does not itself constitute a "major" action. Indeed, Rose does not urge that a separate statement is required each time a particular parcel is condemned. Rather, he alleges that this taking is part of a larger federal practice and policy of acquisition of properties on a significant scale within the existing communities.

However, Rose has alleged no facts tending to show that any such practice and policy of acquisition is currently in effect. In fact, the Environmental Impact Statement shows that such a program was considered and rejected. Conceivably it may be instituted in the future, or the cumulative effect of continued scattered acquisitions may at some point become "major". But the possibility that an action might occur in the future does not give rise to any present requirement that any supplement to the environmental impact statement be filed. *Mobil Oil Corp. v. F.T.C.*, 562 F.2d 170, 173 (2d Cir. 1977).

## IV. *Constitutional Claims*

 In the answer Rose asserts that the summary condemnation of his land constituted a taking of his property without a hearing in violation of his right to due process. However, the statutory procedure under which title to the land vested in the United States upon filing a declaration of taking and payment into court of estimated compensation, 40 U.S.C. § 258a, has been repeatedly held to comport with due process. *See, e. g., Travis v. United States*, 287

F.2d 916, 919, 152 Ct.Cl. 739, *cert. denied,* 368 U.S. 824, 82 S.Ct. 42, 7 L.Ed.2d 28 (1961).

Rose also claims that the Fire Island National Seashore Act deprives him of due process by vesting in the Secretary excessive discretion to decide whether local zoning ordinances are "satisfactory", 16 U.S.C. § 459e–1(e), and to determine what acreage adjacent to a residence is "reasonably necessary to the use of the building" and will thus be considered "improved" property for purposes of this Act. 16 U.S.C. § 459e–1(f). These claims are plainly insufficient.

The Secretary's discretion to determine whether zoning ordinances are "satisfactory" is limited both by the clearly expressed purposes of the Act and the guidelines embodied in it. 16 U.S.C. § 459e–1. The determination of the amount of land "reasonably necessary" for the use of a building is also limited by statute. 16 U.S.C. § 459e–1(f). Any possible ambiguity in these terms is cured by the regulations which the Secretary has promulgated. 36 C.F.R. Part 28.

In the light of the statutory standards, the vesting of discretion in the Secretary does not constitute an unconstitutional delegation of Congressional authority. Even "very broad" congressional delegations of discretionary authority have been sustained. *Citizens Committee for the Hudson Valley v. Volpe,* 425 F.2d 97, 106–07 (2d Cir.), *cert. denied,* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970).

Finally, Rose argues that the Secretary's use of the condemnation power to override the Brookhaven Zoning Board's decision to grant a variance constitutes a violation of the Tenth Amendment.

This defense is insufficient. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), is not in point. That case said that federal legislation and regulation must not trench upon certain integral government functions of the individual states. But as the Supreme Court pointed out in *Hodel v. Virginia Surface Mining and Reclamation Association, Inc.,* —— U.S. ——, ——, 101 S.Ct. 2352,

2366, 69 L.Ed.2d 1 (1981), nothing in the *Usery* decision "suggests that the Tenth Amendment shields the States from preemptive federal regulation of *private* activities." (Emphasis in original). As Justice Blackmun stated in his concurrence in the *Usery* case, that decision "does not outlaw federal power in areas such as environmental protection, where the federal interest is demonstrably greater and where state facility compliance with imposed federal standards would be essential." 426 U.S. at 856, 96 S.Ct. at 2476.

Plaintiff's motion to strike the defenses and for summary judgment is granted. So ordered.