**RIVERS ELECTRIC CO., INC., Plaintiff,**

v.

**4.6 ACRES OF LAND LOCATED IN the TOWN OF CATSKILL, COUNTY OF GREENE, et al. and Unknown Owners, Defendants.**

No. 89–CV–442.

United States District Court, N.D. New York.

Feb. 27, 1990.

Read and Laniado (Sam Laniado, of counsel), Albany, N.Y., for plaintiff.

Walsh Maroney & Ponzini (John St. Onge, of counsel), Tarrytown, N.Y., for defendants John N. Fallon, Grace C. Fallon and Ruth V. Schmidt.

Hiscock and Barclay (Taylor H. Obold, of counsel), Syracuse, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

Plaintiff Rivers Electric Co. moves for partial summary judgment on the issue of its right to condemn certain lands located in Greene County, New York, for construction of a hydroelectric project. Plaintiff also moves for severance of the trial on compensation, and proposes to post a deposit to serve as interim compensation to affected landowners while the trial on compensation is conducted.

### Background

On April 28, 1986, the plaintiff filed with the Federal Energy Regulatory Commission ("FERC") an application for a license to construct and operate a hydroelectric project in the Town of Catskill, Greene County, New York, known as the "Mill Pond Project." The proposed project, to be located on the Catskill Creek, would consist of, among other things, the reconstruction of a previously existing concrete dam four feet high and 200 feet long, the creation of a small reservoir, and construction of a powerhouse containing electrical generating units. The purpose of the project is to produce hydroelectric power to be sold by the plaintiff to Central Hudson Gas & Electric Corp., pursuant to a contract entered into between plaintiff and Central Hudson and approved by the New York Public Service Commission, on March 2, 1989.

As part of the licensing application procedure, plaintiff was required to provide copies of its application to the FERC for service on parties which might or were likely to have an interest in or be affected by the application. 18 C.F.R. § 4.32. Notices of the application were served by the FERC and the New York State Department of Environmental Conservation ("DEC"). According to a mailing list provided by the FERC, among those parties to receive notice of plaintiff's application were the chairman of the Greene County Board of Legislators; William Hagan, the Greene County administrator; the town supervisors of the towns of Coxackie, Catskill, and Hudson; and the village supervisor of the Village of Saugerties. The DEC notified, among others, the New York State Department of Transportation, the New York State Office of Parks and Recreation, and the U.S. Fish and Wildlife Service. These agencies reviewed plaintiff's application along with the DEC, which issued a report on December 8, 1986, stating that the Mill Pond Project would not have a significant effect on the environment. Notices of plaintiff's application were also published in the Catskill Daily Mail, a newspaper with circulation in Catskill, New York, once a week for four consecutive weeks from June 30 to July 21, 1986.

Objections to plaintiff's licensing application were raised by Ruth V. Schmidt, and John N. and Grace C. Fallon, who claimed to be property owners affected by the project. Schmidt and the Fallons were permitted to intervene in the licensing proceedings, pursuant to 16 U.S.C. § 825g(a).[1]

---

1. Title 16 U.S.C. § 825g(a) provides, in pertinent part:

... In any proceeding before it, the Commission, in accordance with such rules and regu-

Neither Greene County, nor its county administrator, attempted to intervene in the proceedings, and they did not participate.

On April 23, 1987, the FERC issued a license to the plaintiff to construct and operate the hydroelectric project. In order to comply with the terms of the license, the plaintiff is required to acquire a fee simple interest in or the right to use in perpetuity the lands needed to build, maintain, and operate the project. Plaintiff has now commenced a condemnation proceeding to acquire its interest in the land. Defendants oppose the condemnation, contending that FERC's issuance of the license was "flawed" because it did not consult with or notify Greene County; that plaintiff could enter into the project area for testing and surveys before its right to condemn the property is decided; and summary judgment is not warranted because the public benefits of the project have not yet been determined.

### Discussion

The plaintiff has instituted its condemnation proceeding pursuant to Section 21 of the Federal Power Act, 16 U.S.C. 814, which states:

> When any licensee cannot acquire by contract or pledges an unimproved dam site or the right to use or damage the lands or property of others necessary to the construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with an improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts. The

practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

The scope of judicial review over the exercise of condemnation power pursuant to federal statute is "decidedly limited." *United States v. New York*, 160 F.2d 479, 481 (2d Cir.), *cert. denied*, 331 U.S. 832, 67 S.Ct. 1512, 91 L.Ed. 1846 (1947). Specifically, the only proper subject for this court's inquiry is whether the acquisition of the property is for a congressionally authorized purpose. *Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954); *United States v. .16 of an Acre of Land*, 517 F.Supp. 1115, 1120 (E.D.N.Y. 1981). Some courts have held that the taking or property may be barred if the taking results from bad faith or arbitrary or capricious motives. *See, e.g., United States v. 101.88 Acres of Land*, 616 F.2d 762 (5th Cir.1980). The Second Circuit, however, has not yet allowed such a defense in a condemnation action. *See United States v. .35 of an Acre of Land*, 706 F.Supp. 1064, 1073 (S.D.N.Y.1988).

The FERC is authorized by Congress, pursuant to 16 U.S.C. § 797, to:

> issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the develop-

lations as it may prescribe, may admit as a party any interested State, State commission, municipality, or any representative of interested consumers or security holders, or any

competitor of a party to such proceeding, or any other person whose participation in the proceeding may be in the public interest.

ment, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States....

A party may condemn land pursuant to the authority vested by Congress for a project "which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce." 16 U.S.C. § 814. The FERC determined that:

The proposed Project would generate electrical energy from a renewable resource without significantly affecting existing environmental conditions at the Project area....

Affidavit of Charles Pepe, Exhibit I, p. 9.

The FERC also determined that:

The power from the project would be useful in meeting a small portion of the need for power projected for the New York Power Pool (NYPP) area of the Northeast Power Coordinating Council (NPCC) region. From the time the project goes on line (i.e., into commercial operation) it would be available to displace fossil-fueled electric power generation in the NPCC region and adjacent areas, and thereby, conserving non-renewable fossil fuels and reducing the emission of noxious by-products caused by the combustion of fossil fuels.

Pepe affidavit, Exhibit I, p. 6.

This condemnation is being made for a congressionally authorized purpose, i.e., it is an improvement or development of a waterway, which in the judgment of the FERC, is desirable and justified in the public interest for the benefit of interstate

commerce. The scope of this court's review ends there.

Even if the court were to entertain the defendant's contention that the condemnation is in bad faith or arbitrary and capricious, defendants have not alleged sufficient facts that would defeat a motion for summary judgment. "To allege bad faith a party must charge facts rather than conclusions, and such facts must suggest actual malevolence by the officer towards the complaining party." *United States v. 40.-75 Acres of Land,* 76 F.Supp. 239 (N.D.Ill. 1948). Even if defendants were to argue that Greene County's lack of participation in the licensing proceeding made the licensing determination somehow arbitrary and capricious, defendants aver no facts which would show bad motive on the part of the FERC or the plaintiff.

■ Defendants' contentions that the license is invalid because (1) Greene County was not notified or consulted with, and (2) the public benefits of the project have not been determined, must fail for two reasons. First, while defendants submitted affidavits by William Hagan, Greene County Administrator, and Ronald M. Roth, Greene County Planning Director, stating that Greene County was not notified of the FERC licensing proceedings, the FERC mailing list showing that Hagan and the chairman of the Greene County Legislature, among many others, were mailed notices of the licensing proceedings, is convincing evidence to the contrary. Secondly, whether or not Greene County or its administrators had notice of the licensing proceedings, the only means available to challenge the decision of the FERC is to petition the circuit court for review within sixty days of the licensing order upon application for rehearing. 16 U.S.C. § 825*l* (b); [2] *Kentucky Utilities Co. v. FERC,* 789 F.2d 1210 (6th Cir.1986). Failure to comply with 16 U.S.C. § 825*l* (b) creates a jurisdictional

---

**2.** Title 16 U.S.C. § 825*l* (b) provides, in pertinent part:

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates

is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part....

bar to judicial review of complaints regarding the licensing procedure. *Id.* at 1214–15; *Cincinnati Gas & Electric Co. v. FERC*, 724 F.2d 550, 553 (6th Cir.1984); *Cities of Batavia v. FERC*, 672 F.2d 64, 72–73 (D.C.Cir.1982). None of the defendants timely petitioned for review of FERC's licensing order, and this court is without authority to question the necessity or purpose of the project. That decision is solely within the realm of the FERC.

██ Defendants also urge that plaintiffs must comply with certain state statutes and regulations before they may commence the hydroelectric project, including New York Energy Law § 21–106. Under Section 21–106 and regulations promulgated thereunder, the owner or operator of a hydroelectric project is required to comply with rules and regulations of the state energy office with respect to public health and safety concerns. The state statutes and regulations do not apply to this project, however, since it is covered by the Federal Power Act, which preempts state regulation of federally sanctioned power projects with some limited exceptions.

The Federal Power Act, 16 U.S.C. §§ 791a–825r, establishes a federal licensing and regulatory scheme for water power projects utilizing the navigable waters of the United States and other waters over which Congress has jurisdiction. The Act preserves the power of states to regulate matters "relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein." 16 U.S.C. § 821. However, it is well-settled that the federal scheme supersedes state regulation of all other aspects of a federal water power project. *First Iowa Hydro-Electric Cooperative v. Federal Power Commission*, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946); *Town of Springfield v. State of Vermont Environmental Bd.*, 521 F.Supp. 243 (D.Vt.1981). The defendants here do not allege that any part of the project falls within the coverage of 16 U.S.C. § 821. Any other condition imposed by the state which would vest in the state a "veto power" over the federal project is not permitted. *First Iowa*, 328 U.S. at 164, 66 S.Ct. at 911.

Defendants further urge that plaintiff could be permitted to enter onto the property pending condemnation pursuant to Section 404 of the New York Eminent Domain Procedure Law, which permits entry onto property by a condemnor during condemnation proceedings "for the purpose of making surveys, test pits and borings, or other investigations, and also for temporary occupancy during construction." This step is unnecessary, since the plaintiff's right to condemn the property pursuant to its delegated authority is clear.

██ Plaintiff requests, since it must commence construction as soon as possible to comply with its license, that judgment of condemnation be entered immediately, and that a separate trial be held on the issue of just compensation. The plaintiff proposes to deposit with the court $7,200 as compensation for the lands sought to be condemned, pending final determination of just compensation for the lands at trial. The amount proposed to be deposited is based on an appraisal of the lands commissioned by the plaintiff. *See* Pepe affidavit, Exhibit V. The court has authority to so sever the action, and grants the plaintiff's request. *See Winooski Hydroelectric Co. v. Five Acres of Land*, 769 F.2d 79 (2d Cir. 1985); *see also Atlantic Seaboard Corp. v. Van Sterkenberg*, 318 F.2d 455 (4th Cir. 1963).

Accordingly, the plaintiff's motion for partial summary judgment is granted, and the court directs that judgment of condemnation of the properties identified in the complaint be entered; that plaintiff be permitted to enter immediately upon the lands to commence construction of the project; that plaintiff shall deposit $7,200 with the court as compensation for the lands sought to be condemned, subject to a final determination of just compensation; and that a separate trial be conducted on the issue of just compensation.

IT IS SO ORDERED.