1997 ME 167

## NO TANKS INC.

v.

## PUBLIC UTILITIES COMMISSION.

Supreme Judicial Court of Maine.

Argued June 12, 1997.

Decided July 23, 1997.

---

Thomas J. Connolly (orally), Portland, for plaintiff.

Carol A. MacLennan (orally), Public Utilities Commission, Augusta, for defendants.

Paul B. Dexter (orally), Susan L. Geiser, Leboef, Lamb, Greene & Macrae, Boston, for Northern Utilites.

Wayne R. Jortner, Office of Public Advocate, Augusta, for defendants.

William J. Sheils, Perkins, Thompson, Hinckley & Keddy, Portland, for Portland Natural Gas Transmission System.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] No Tanks Inc. (No Tanks) appeals from an order of the Public Utilities Commission (Commission) approving an agreement between Northern Utilities Inc. (Northern) and its affiliate Granite State Gas Transmission Inc. (Granite State) and rejecting a second agreement between Northern and its affiliate Portland Natural Gas Transmission System (Portland Gas). Pursuant to the terms of the first agreement, Granite State is to provide storage and delivery of liquified natural gas to Northern from a storage tank to be constructed in Wells. The second agreement provided for the delivery of gas to Northern by means of a pipeline to be constructed by Portland Gas.

[¶ 2] No Tanks, a nonprofit citizens organization of ratepayers and residents of the Wells area, opposes the first agreement and the construction of the storage tank. It argues on appeal that the Commission erred in limiting the scope of its review to economic analyses and in excluding safety and environmental concerns. It also argues that the Commission abused its discretion by failing to require Northern to give more careful consideration to an alternative source of gas supplies. Finding no error, we affirm the judgment.

██ [¶ 3] Northern is the sole local distributor of natural gas in Maine. Granite State is an interstate gas pipeline company

that presently delivers gas to Northern over two separate pipelines. Granite State leases one of the pipelines from Portland Pipe Line Company and uses it to deliver Canadian gas to Northern. The lease will terminate in April 1998, and Northern has entered into agreements with Granite State and Portland Gas to obtain replacement supply sources. Northern filed the two agreements with the Commission seeking review and approval pursuant to 35–A M.R.S.A. § 707(3)(1989),[1] which provides hat no public utility may contract with an "affiliated interest" without Commission approval. Both Granite State and Portland ·Gas are affiliated with Northern within the statutory meaning of "affiliated interests."[2] Northern also requested that the Commission conduct a prudence review for rate making purposes.

■ [¶ 4] No Tanks argues that the Commission erred by failing to review and regulate safety and environmental impacts of the proposed storage tank. We find no support in the law for this argument. The Commission correctly ruled that it has no authority to adjudicate safety and environmental issues related to the Wells tank facility because such regulation is preempted by federal law.[3] In *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988), the United States Supreme Court held that the Natural Gas Act, 15 U.S.C. § 717 et seq., has occupied the field in regulating rates and facilities of interstate natural gas companies[4] to the exclusion of state law. The Court found that a Michigan statute requiring pre-issuance review of long-term

securities issued by interstate natural gas companies was a "regulation of the rates and facilities of natural gas companies used in transportation and sale for resale of natural gas in interstate commerce." *Schneidewind,* 485 U.S. at 306, 108 S.Ct. at 1154. Thus the statute was preempted as "an attempt to regulate matters within the Federal Energy Commission exclusive jurisdiction." *Id.* at 308, 108 S.Ct. at 1155.

[¶ 5] Granite State proposes to use the Wells tank to sell natural gas in interstate commerce and the tank is an interstate natural gas pipeline facility subject to regulation by the Federal Energy Regulatory Commission (FERC). The siting of the facility is subject to FERC approval pursuant to the Natural Gas Act and the Natural Gas Pipeline Safety Act, 49 U.S.C. § 60101 et seq. Pursuant to the latter Act, the U.S. Department of Transportation has promulgated comprehensive safety standards for all pipeline and storage facilities and administers an inspection program to ensure compliance with its standards. 49 C.F.R. pt. 193 (1996). Granite State must obtain a certificate of public convenience and necessity from FERC authorizing the construction and operation of the Wells tank. 15 U.S.C. § 717f(c) (1994). Its application must include environmental impact information pursuant to 18 C.F.R. § 157.14(a)(6–d) (1996), and a certification of compliance with the applicable standards pursuant to 49 U.S.C. § 60104(d)(2) (1994). A Commission review of safety and environmental issues surrounding the siting of the Wells tank would be an attempt to regulate

---

1. 35–A M.R.S.A. § 707(3) provides in part that:
 No public utility may ... contract with any affiliated interest until the commission finds that the contract or arrangement is not adverse to the public interest and gives the contract or arrangement its written approval.
 Because we reach our decision on federal preemption grounds, we need not decide whether the Commission has statutory authority to consider safety and environmental concerns pursuant to a section 707 public interest review of an affiliated interest transaction.

2. Northern and Granite State are wholly owned subsidiaries of Bay State Gas Company. Natural Gas Development Inc., a wholly owned subsid-

iary of Granite State, owns a 17.5% partnership interest in Portland Gas.

3. The Commission did not preclude the presentation of evidence of safety or environmental factors that would affect the costs of the facility. No evidence of this nature was submitted by No Tanks.

4. A "natural gas company" under the NGA is an individual or corporation "engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of gas for resale." 15 U.S.C. § 717a(6)(1994).

matters within FERC's exclusive jurisdiction contrary to the preemption rule announced in *Schneidewind. See National Fuel Gas Supply v. Public Service Comm'n,* 894 F.2d 571 (2nd Cir.1990) (state law requiring certificate of environmental compatibility and public need for interstate pipeline preempted by FERC).

 [¶ 6] No Tanks argues that there can be no preemption unless the Commission's review actually conflicts with a FERC decision. Since FERC has not yet made a decision on Granite State's filing for a certificate, no conflict has occurred. No Tanks completely misconstrues and ignores the well established law concerning federal preemption. The Court in *Schneidewind* held that federal law occupied the field of regulating the rates and facilities of interstate natural gas. Thus any state attempt to regulate is preempted. Even under a conflicts analysis, which the *Schneidewind* court discussed as an alternative ground for its decision, "the state law may be preempted even though 'collision between the state and federal regulation may not be an inevitable consequence.' " *Schneidewind,* 485 U.S. at 310, 108 S.Ct. at 1156 (citation omitted). As the Second Circuit stated in *National Fuel*:

> Because FERC has authority to consider environmental issues, states may not engage in concurrent site-specific environmental review. Allowing all the sites and all the specifics to be regulated by agencies with only local constituencies would delay or prevent construction that has won approval after federal consideration of environmental factors and interstate needs
>
> . . . .

894 F.2d at 579. *See also Kern River Gas Transmission v. Clark County, Nevada,* 757 F.Supp. 1110, 1114 (D.Nev.1990) (local government safety standards can not be applied to interstate pipeline if they conflict with FERC requirements or unduly delay or encumber its construction); *ANR Pipeline Co. v. Iowa State Commerce Comm'n,* 828 F.2d 465, 470 (8th Cir.1987) ("[T]he NGPSA leaves nothing to the states in terms of substantive safety regulation of interstate pipelines, regardless of whether the local regulation is more restrictive, less restrictive, or identical to the federal standards.").

[¶ 7] Next, No Tanks challenges the Commission's determination that Northern's agreement with Granite State represents a prudent acquisition of resources for rate-making purposes. The Commission found that the proposed storage tank is the best option for meeting the short-term gap in supply and that it is a long-term economic source of gas for peak demand periods. No Tanks argues that the Commission erred by failing to require Northern to give greater consideration to an alternative source of supply. Contrary to No Tanks' contention, there is competent and substantial evidence in the record to support the Commission's determination that Northern's decision and course of conduct was one "which [a] reasonable manager would have made or followed in light of the circumstances then existing and known or which reasonably could have been known." *Re Seabrook Involvements by Maine Utilities,* 67 P.U.R. 4th 161 (Me. P.U.C.1985).

The entry is:

Judgment affirmed.

