**TENNESSEE GAS PIPELINE COMPANY, Plaintiff,**

v.

**MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, City of Revere, Massachusetts, City of Malden, Massachusetts, Boston Gas Company, New England Power Company, Massachusetts Electric Company, Boston & Maine Railroad, and approximately six acres of permanent easement and thirty acres of temporary work space over the Saugus Branch of the Boston and Maine Corporation Railroad, Defendants.**

**TENNESSEE GAS PIPELINE COMPANY, Plaintiff,**

v.

**CITY OF MALDEN, MASSACHUSETTS, and Approximately 0.03 Acres of Permanent Easement and 0.05 Acres of Temporary Work Space Over Land in the City of Malden, Defendants.**

Nos. 97–CV–12724–MEL, 97–CV–12577–MEL.

United States District Court, D. Massachusetts.

April 1, 1998.

Paul E. Troy, Sherburne, Powers & Needham, Boston, MA, for Tennessee Gas Pipeline Co.

John S. Leonard, Menard, Murphy & Walsh, Boston, MA, for Massachusetts Bay Transportation Authority, defendant.

Stephen G. Doucette, NE Power Research Service Co., Westborough, MA, for New England Power Co. Massachusetts Electric Co. and Department of Metropolitan Dist. Com'n.

Richard Goldstein, Charlestown Navy Yard, Boston, MA, for Massachusetts Water Resources Authority.

Neal C. Tully, Masterman, Culbert & Tully, Boston, MA, for Boston & Maine Railroad.

## MEMORANDUM AND ORDER

LASKER, District Judge.

On June 25, 1997, the Federal Energy Regulatory Commission ("FERC" or "the Commission") issued, pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, a Certificate of Public Convenience and Necessity (the "Certificate") to Tennessee Gas Pipeline Company. Tennessee is a company engaged primarily in the business of transporting, via pipeline, natural gas and its by products The Certificate authorizes Tennessee to construct, install, operate, and maintain a 7.54 mile extension of its existing pipeline in the Town of Saugus, to an existing natural gas terminal in the city of Everett.[1] On December 24, 1997, FERC issued an order denying various requests for rehearing and a stay of the Certificate. It also specified that Tennessee "shall complete construction and place in service the facilities authorized [in the Certificate] within one year of the date of issuance of th[e] order."

The pipeline extension is planned to run generally along what is known as the "Saugus Branch" of the Boston & Maine Corporation Railroad, through the cities of Revere, Malden and Everett. The Saugus Branch is owned by the Massachusetts Bay Transit Authority ("MBTA"). The planned route also traverses property owned by the City of Malden and used as a parking lot, "conservation" property owned by the Town of Saugus, and a railway right-of-way owned by Consolidated Railroad ("Conrail"). Because Tennessee was unable to reach respective agreements with each of these property owners, it sued—in four cases deemed "related"—for judgments of taking by eminent domain. It further sued for injunctions prohibiting the property owners and other interested parties[2] from interfering with Tennessee's exercise of the authority it was granted by FERC. Tennessee now moves for summary judgment declaring its right to take by eminent domain the MBTA and Malden properties, and to enjoin interference by the defendants in the MBTA and Malden cases.[3]

*Tennessee's Motions for Summary Judgment*

Tennessee argues that it is authorized to take the MBTA and Malden properties pursuant to Section 7(h) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h). Section 7(h) grants the right of eminent domain to an entity meeting the statutory definition of "natural gas company"[4] where: (1) the company holds a FERC Certificate authorizing a particular pipeline project, (2) the use of the land to be taken is necessary to the project, and (3) the company and the relevant property owners have failed to agree on a price for the property. Specifically, the statute provides:

1. The terminal is owned by Distrigas of Massachusetts Corporation ("DOMAC"), and the pipeline extension is actually referred to as the "DOMAC project."

2. Several entities claim to enjoy rights associated with, or to hold various property interests in, the MBTA's Saugus Branch property. Of them, the following have intervened (unopposed) as defendants in the MBTA case: Boston Gas Company, New England Power Company, Massachusetts Electric Company, Boston & Maine Railroad, and the cities of Revere and Malden.

3. Tennessee originally moved in each of the four cases for immediate entry on and possession of the respective properties. Oral argument on the motions in the MBTA and Malden cases was held on March 11, 1998. At argument, Tennessee moved orally for the conversion of the motions to the present motions for summary judgment. The motion was allowed, and the parties agreed to a March 20, 1998 deadline for defendants' submission of any additional evidentiary materials. No such materials were filed.

4. The relevant provision defines a "natural gas company" as "a person engaged in the sale or transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. § 717a. There is no dispute that Tennessee is a natural gas company.

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way . . ., it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State Courts.

15 U.S.C. § 717f(h). There is no dispute that these conditions have been satisfied.

The defendants oppose, however, on one or more of the following grounds: (1) the FERC Certificate held by Tennessee is not final and binding, and, in the case of Boston and Maine Railroad ("B & M"), even if it is final, it is not binding on Boston and Maine in light of that entity's not having been provided individual notice of the FERC proceedings; (2) Tennessee has failed to implement reasonable safety precautions; (3) the DO-MAC project may interfere with the defendant owners' and defendant easement holders' respective property rights and interests, which in turn would be a public hardship because those rights involve public utilities and services; (4) there is no true public need for a greater supply of natural gas; and (5) Massachusetts law prohibits the taking. None of the defense arguments has merit.

■ With respect to the first argument, Tennessee's FERC Certificate is indeed final and binding. The NGA itself directs that an order by FERC not be stayed unless either FERC itself—in the context of a rehearing— or the reviewing Court of Appeals specifically orders a stay. *See* 15 U.S.C. § 717r(c).[5] *See also Ecee, Inc. v. Federal Power Comm'n,* 526 F.2d 1270, 1274 (5th Cir.) (order is final "unless and until it is stayed, modified, or reversed"), *cert. denied,* 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976); *State of*

*Louisiana v. Federal Power Comm'n,* 483 F.2d 972 (5th Cir.1973) (neither application for rehearing, nor the institution of review in the Court of Appeals operates to stay a FERC order "unless such a stay is specifically ordered by the Commission or Court"); *Jupiter Corp. v. Federal Power Comm'n,* 424 F.2d 783, 791 (D.C.Cir.1969) (orders effective during disposition of review proceedings), *cert. denied,* 397 U.S. 937, 90 S.Ct. 944, 25 L.Ed.2d 118 (1970).

■ The related claim of lack of individualized notice asserted by B & M—which is taken to charge that the Certificate is therefore not binding as to property in which the railroad has an interest—also fails. The claim is, in essence, a collateral attack on the validity of the Certificate. As explained more fully below, such a challenge is impermissible. *See Tennessee Gas Pipeline Co. v. 104 Acres of Land, More or Less,* 749 F.Supp. 427, 430 (D.R.I.1990) (certificate cannot be collaterally attacked in eminent domain proceeding). Moreover, even if this Court had the authority to consider a lack of notice claim, the law does not require that B & M have been given individual notice. FERC regulations state only that the applicant for a certificate must provide the Commission a form of notice suitable for publication in the Federal Register, and that FERC will then publish the notice in the Register. *See* 18 C.F.R. §§ 157.6(b)(7), 157.9. There is no dispute that Tennessee provided FERC a form of notice satisfying the regulations, and that FERC indeed published it. B & M has cited no authority for the proposition that such a notice procedure provides less than that required by statute or the Constitution. *See 104 Acres of Land,* 749 F.Supp. at 430–31 (noting the "line of decisions holding that landowners have no due process right to notice and a hearing in agency proceedings to determine the need for condemnation").

■ Nor do defendants' safety and interference arguments save the day. As an initial point, no defendant has brought to the

**5.** The statute provides:

The filing of an application for rehearing . . . shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceed-ings [before a reviewing Court of Appeals] shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

15 U.S.C. § 717r(c).

debate any evidentiary support for the claims of potential danger or interference. Moreover, even if defendants were to proffer sufficient detail to raise questions about the advisability or fairness of FERC's actions related to safety and the potential impairment of others' property rights, this Court would have no authority to amend or qualify the Commission's order. This Court's role is one of mere enforcement. *Williams Natural Gas Co. v. City of Oklahoma City,* 890 F.2d 255, 264 (10th Cir.1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990); *Kern River Gas Transmission Co. v. Clark County,* 757 F.Supp. 1110, 1116 (D.Nev.1990). The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope. *104 Acres of Land,* 749 F.Supp. at 430.

Under the statutory framework, there is no appeal of a FERC decision save to the appropriate Court of Appeals. Disputes as to the propriety of FERC's proceedings, findings, orders, or reasoning, must be brought to FERC by way of request for rehearing. 15 U.S.C. § 717r(a); *104 Acres of Land,* 749 F.Supp. at 430. Appeals may thereafter be brought before a U.S. Court of Appeals only. 15 U.S.C. § 717r(b); *Williams,* 890 F.2d at 262 (judicial review *exclusive* in the Courts of Appeals).

■ Moreover, collateral attack of a FERC certificate in the District Court is impermissible. In *Williams,* the Tenth Circuit held that the district courts' authority under the NGA—to authorize the FERC certificate holder to condemn property—"does not provide challengers with an additional forum to attack the substance and validity of a FERC order." *Id.* at 264; *104 Acres of Land,* 749 F.Supp. at 430 (certificate may not be challenged in eminent domain proceeding; landowner's only recourse is request for rehearing or appeal of FERC order). *See also City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 335–340, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958) (power project license granted by FERC's predecessor may not be collaterally attacked in eminent domain action under analogous Federal Power Act); *Rivers Elec.*

*Co., Inc. v. 4.6 Acres of Land,* 731 F.Supp. 83, 86–87 (N.D.N.Y.1990) (FERC license to build hydroelectric power plant cannot be challenged in eminent domain proceeding pursuant to same legislation).

■ The rule collateral attack is grounded in Congress's having vested in FERC exclusive jurisdiction over the regulation of the transport and sale of natural gas in interstate commerce. *In re Permian Basin Area Rate Cases,* 390 U.S. 747, 767, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968) ("Congress has entrusted the regulation of the natural gas industry to the informed judgment of the Commission, and not to the preferences of reviewing courts. A presumption of validity therefore attaches to each exercise of the Commission's expertise."); *Public Serv. Comm'n of State of N.Y. v. Federal Power Comm'n,* 327 F.2d 893, 896–97 (D.C.Cir.1964). This Court has simply no power to impose conditions concerning safety or the potential for interference with others' property rights on a pipeline company's exercise of the authority granted it by FERC.

Defendants' argument that there is no present public need for the DOMAC project lacks merit for the same reasons. *See Federal Power Comm'n v. Sunray DX Oil Co.,* 391 U.S. 9, 51–52, 88 S.Ct. 1526, 20 L.Ed.2d 388 (1968) (proper forum for challenging the need for pipeline facilities is administrative proceedings). *See also Rivers Electric,* 731 F.Supp. at 87 ("[The district] court [in a Federal Power Act case] is without authority to question the necessity ... of the project. That decision is solely within the realm of the FERC."). Moreover, contrary to defendants' suggestions, the fact that the order issuing Tennessee's Certificate did not contain detailed findings as to *present* public need, is inconsequential. FERC is statutorily required to determine—with respect to public need—only whether the proposed project "is or will be required by the present or future public convenience and necessity." *See* 15 U.S.C. § 717f(e) (emphasis supplied). Furthermore, defendants cite no authority—and there does not seem to be any—for their position that the generality of the Certificate's "necessity" finding renders it insufficient. The law does not appear to require

such findings to be braced with subsidiary findings of regional natural gas shortages, increased demand, or the like.

The final defense argument, asserted by the MBTA alone, is that Mass.Gen.Laws ch. 164, § 75C prohibits the taking by eminent domain of the Saugus Branch property. The MBTA argues that the proposed taking would be illegal because section 75C bars the taking of property "within the location of any railroad," and the easements sought by Tennessee are, by virtue of proximity to the Saugus Branch, such property. The argument lacks merit.

■ As a threshold matter, the language of the statute on which the MBTA relies unambiguously relates only to takings under particular Massachusetts state laws—namely chapter 79 of the General Laws, which is the general eminent domain chapter, and section 75C itself, which states procedures required for chapter 79 takings by natural gas pipeline companies. Section 75C provides in relevant part:

> No lands or rights of way or easements therein shall be taken by eminent domain *under the provisions of this section* . . . within the location of any railroad. . . .

(emphasis supplied). Because Tennessee does not seek to take the MBTA property under the provisions of section 75C, the statutory prohibition on pipeline companies' taking property within the location of a railroad is not applicable to the case at hand.

■ In any event, the Massachusetts statute is preempted by the NGA. As the MBTA acknowledges in its brief, the NGA "occupies the field" with respect to the regulation of natural gas "rates and facilities." *See Schneidewind v. ANR Pipeline Co.*, 485

U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988);[6] *Public Util. Comm'n of the State of Cal. v. Federal Energy Reg. Comm'n*, 900 F.2d 269, 273–74 (D.C.Cir.1990), *National Fuel Gas Supply Corp. v. Public Serv. Comm'n of the State of N.Y.*, 894 F.2d 571, 575–79 (2d Cir.), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3240, 111 L.Ed.2d 750 (1990); *Kern River*, 757 F.Supp. at 1114–15.[7]

There is no question that the pipeline itself is a "facility" used in the transportation of natural gas. The MBTA's argument, however, is that section 75C is not a regulation of natural gas facilities because it concerns only the *taking* of property for the facilities. The argument is unpersuasive. A pipeline must be built and housed on property, and interference with access to that property is interference with the facility itself. The MBTA cites no authority suggesting otherwise. In any event, the Massachusetts statutory prohibition of the taking of certain property by eminent domain is in direct conflict with the federal authorization, and that conflict is dispositive of the preemption issue. *See Schneidewind*, 485 U.S. at 300 ("[E]ven where Congress has not entirely displaced state regulation in a particular field, state law is pre-empted when it actually conflicts with federal law."). It is obvious that the federal regulatory scheme Congress established in the Natural Gas Act could not function if state law was allowed to prohibit takings by eminent domain for gas facilities.

\* \* \* \* \* \*

The Motions for Summary Judgment on the issue of Tennessee's right to take by eminent domain the MBTA and City of Malden properties—as described in exhibits to the Complaint in Condemnation in case 97–CV–12724, and the Amended Complaint in

---

6. In *Schneidewind*, a unanimous Court held that a state statute requiring natural gas companies to obtain approval from a state public service commission before issuing long-term securities was preempted by the NGA. 485 U.S. at 300–311. The Court identified the definitive question as whether the statute was "a regulation of the rates and facilities of natural gas companies used in transportation and sale for resale of natural gas in interstate commerce." *Id.* at 306.

7. The MBTA appears to have anticipated an argument by Tennessee that the field occupied by

the NGA was broader than just "rates and facilities." The section in its brief on the scope of preemption, therefore, predictably, cites authority, *i.e.*, *No Tanks Inc. v. Public Utils. Comm'n*, 697 A.2d 1313 (Me.1997), for the proposition that in fact "only" the field of "rates and facilities" is occupied, and attempts to explain that the case law relied on by Tennessee does not establish some broader scope. Consequently, the MBTA's argument is helpful only to Tennessee. Notably, Tennessee did not in fact make the anticipated argument.

Condemnation in case 97–CV–12577, respectively—are granted.

Tennessee's Motions to Enjoin Interference are denied without prejudice, on the grounds that defense counsel explicitly or tacitly represented at oral argument that their clients would not improperly interfere with the proposed condemnation.

Submit proposed decrees on notice.

It is so ordered.